BENEFICIAL COMMERCIAL CORPO-RATION, Plaintiff-Appellee,

v.

Dr. Paul C. THOMAS, Nancy G. Thomas, Defendants-Appellants.

No. 234, Docket 84–7496.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1984.

Decided Nov. 13, 1984.

Samuel Tannenbaum, New York City (Di-Falco, Amhurst, Smithson, Tannenbaum & Duval, New York City, on the brief), for defendants-appellants.

Susan G. Rosenthal, New York City (Winick & Rich, P.C., New York City, on the brief), for plaintiff-appellee.

Before KAUFMAN and WINTER, Circuit Judges and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

Defendant-appellant, Dr. Paul C. Thomas, has been at all relevant times a doctor residing in Alabama. There is no indication that he has any particular knowledge of, or experience with, or intent to use, possess, or market equipment used in coal mining.

George R. Stuebgen, a sales representative of plaintiff-appellee, Beneficial Commercial Corporation, a New Jersey corporation, induced Thomas to enter into two contracts, each dated September 2, 1981. The first is a contract under which Benefi-

cial leased specified coal-mining machinery to Dr. Thomas for a period of 36 months at a monthly rental of $2,152.74, Dr. Thomas to have not merely the right of possession during those 36 months but also the option at the end of that period to purchase the machinery. The second simultaneous contract is a lease by Dr. Thomas of the same machinery for the same period of time to B.J. & T. Resources, Inc. (BJ & T) at a monthly rental of $5,000. This court, for convenience, will refer to those two contracts, in light of their origin, as an "investment package deal", though the witnesses, parties, counsel, briefs, and district court do not so refer to it. We regard that descriptive term as appropriate in light of Dr. Thomas's failure to show other than an investment purpose in those two closely meshed contracts.

Before those contracts were executed, Beneficial, in a contract to which Dr. Thomas was not a party or a person in any way referred to, had bought from King Enterprises the coal equipment machinery which was later covered by the two September 2, 1981 leases. Much of the evidence, the arguments, and the district court's opinion is addressed to the factual issues as to how much King charged Beneficial for the machinery, how much and in what manner and with what instruments or credits Beneficial paid King for the machinery, and—in greatest detail—what representations Beneficial or its agents made to Dr. Thomas as to what was the price which Beneficial had paid King and what was the fair market value of the machinery. For the reasons later set forth, we regard all those factual issues as immaterial, and we see no useful purpose to be served by our expressing any opinion as to which if either of the parties to this appeal is correct in its position on those issues.

After the September 2, 1981 contracts were executed, in each of eight months BJ & T paid Dr. Thomas $5,000 monthly rental due under the second contract, and Dr.

* The Honorable Charles E. Wyzanski, Jr., Senior District Judge, District of Massachusetts, sitting    by designation.

Thomas paid Beneficial $2,152.74 due under the first contract. Then BJ & T defaulted under the second contract, and Dr. Thomas defaulted under the first contract.

On December 20, 1982 Beneficial filed in the district court a complaint which, so far as material, claimed that Dr. Thomas had broken his contract and that, pursuant to its terms, (including *inter alia* an acceleration clause applicable when a default in rental payments occurred, and a clause with respect to attorneys' fees and cognate matters), Dr. Thomas was indebted to Beneficial in amounts which may be conveniently stated as being in excess of $60,000, and that, in addition to recovering such amounts Beneficial was entitled to have the machinery returned to it by Dr. Thomas.

Dr. Thomas filed an answer and counterclaim. Clarity will be furthered by our addressing first the counterclaim. Before doing so, we note that we are not unaware of the textual ambiguity of the district court's judgment in dealing with the counterclaim. Yet it is clear that substantively the parties, all counsel, and the district judge throughout the proceedings in the district court, and counsel in this court, have treated this case as having fully involved the counterclaim and have construed the district court's judgment as though it explicitly embodies a summary judgment against defendant's counterclaim as well as a summary judgment in favor of plaintiff's complaint and as though such a double-barrelled judgment had been sought by an appropriate motion filed by Beneficial. We shall do the same. Any other course would reflect unnecessary technical rigor and overlook the importance of prompt disposition of cases where both the substantive law and the ultimate justice of the cause are crystal clear.

■ In his counterclaim Dr. Thomas contends that he was tortiously injured by the fraudulent misrepresentation of Beneficial as to what it had paid King for the machinery and as to what was the fair market value of the machinery. For the sake of argument, we shall assume that as to both topics Beneficial made false, fraudulent

statements. That assumption does not prove Dr. Thomas's claim that he has been injured by Beneficial and so is entitled to recover in an action of deceit or in any other tort action. What is missing to support Dr. Thomas's claim is any specific evidence or affidavit that the allegedly false and fraudulent statements caused him any demonstrated injury. It is of critical importance to underscore the factual picture Dr. Thomas has given of himself as an investor in contracts not as a coal miner, or a dealer in coal mining machinery, or a person who wants for any purpose whatsoever the machinery covered by the contract. It is plain that Dr. Thomas has not explicitly testified that he would not have entered into the investment package deal if he had been told the real value of the machinery or its cost to Beneficial. So far as appears, he would have made his investment if he saw that (provided that BJ & T did not default) he could "cover" his lease of machinery from Beneficial by his simultaneous re-lease or sub-lease of the same machinery for the same period of time but at a higher rental to BJ & T.

Even were we to assume that, as Thomas claims, Beneficial had fraudulently misrepresented to him the market value of the machinery or the price at which Beneficial bought it from King, Thomas has failed to offer in affidavit or other form evidence that if he had *at the time of the lease contract* known the "true" facts he would have abstained from the transaction and foregone the possibility of making the profit available due to the difference between a $2,152.74 monthly rental and a $5,000 monthly rental. Nor does Thomas offer evidence that if he had known the "true" facts, he could have induced Beneficial to set the rental charge to him at a lower figure than $2,152.74 monthly. All that Thomas seems to suggest is that he *might* have induced Beneficial to diminish its own gains from the package deal. Might have beens are adequate basis for dreams of wealth, not for judgments requiring adverse parties to put cash on the clerk's counter.

In the foregoing analysis we have not overlooked paragraph 22 of the counterclaim stating that:

Said defendant would not have entered into the Equipment Lease and other documents except for his reliance upon the truth of said representations and inducements.

Nor have we overlooked paragraph 26 of the affidavit of Dr. Thomas wherein he states:

Surely, no one can imagine that I would have executed the [Beneficial-Thomas] Lease had I know[n] that there was a corrupt agreement to inflate the purchase price so that a representative of plaintiff could share in [a] $20,000.00 pay-off.

The first allegation is not explicitly supported by Dr. Thomas in any affidavit. The second is a very artful statement. It seems deliberately to avoid facing up to what is the real issue. We are not concerned with what someone would "imagine" Dr. Thomas's attitude would have been on September 2, 1981. The precise question is whether Thomas has specifically testified that on September 2, 1981 he would have walked away from the package deal offered to him unless Beneficial, in view of its relation to King and to the market, were prepared to give him a larger return than the difference between $2,152.74 and $5,000 a month.

The flaw in Dr. Thomas's position is that there is no evidence that Beneficial would have leased to Thomas at less than $2,152.74 a month for 36 months; and there is no evidence from Thomas or anyone else that Thomas would not rather have had than not to have had from Beneficial a 36-month lease at $2,152.74 a month so long as it was tied up in an investment package deal with a simultaneous lease of the same machinery by Thomas to BJ & T at $5,000 a month. What Dr. Thomas asks us to consider is the possibility of a profit he might have made from the difference between a less than $2,152.74 monthly lease and a $5,000 monthly lease. But there is no evidence that such a possibility

was ever in the cards. Dr. Thomas was not deceived in September 1981. He deceives himself today in thinking that he has proved that in 1981 had he known all the "true" facts he would have been offered a better deal.

Our decision of why Dr. Thomas could not succeed in his counterclaim and therefore was properly subjected by the district court to an adverse judgment on that counterclaim leads to a parallel disposition of so much of the appeal to us as is directed at the district court's summary judgment against him as a defendant in the main action.

■ In the main action, that is in the complaint, Beneficial sought to recover damages for unpaid rent and cognate charges and to regain the machinery itself. Of Thomas's pleaded defenses only one is pressed upon us: that is, that he had been defrauded by not being told the true amount which King had received from Beneficial for the machinery and by being told falsely the market values of the machinery. Even if Dr. Thomas was fraudulently misinformed that fraudulent misinformation was immaterial unless he could prove that had he been accurately informed he would rather have made no investment in 1981 than to have made the investment he actually did. To this he did not testify. What we have said in connection with the counterclaim applies *mutatis mutandis* to his defense to the complaint.

■ To be sure, the burden of proof with respect to the complaint rested on Beneficial. But it has borne the burden by proving the lease and Thomas's default; Thomas has not shown any ground for avoiding the obligation of the lease contract or rescinding the same.

We see no occasion to cite any precedents in support of our opinion. Properly viewed, this case turns merely on an analysis of the facts.

The judgment of the district court, construed as judgment for Beneficial Commercial Corporation both as plaintiff in the

complaint and as defendant in the counter-claim, is affirmed.